NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL LUKACS,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>PURVI PADIA DESIGN LLC, PURVI PADIA, and IZABELLA TABI,<br><br>　　　　　　　Defendants. | Civil Action No. 21-19599 (SDW) (JRA)<br><br>**OPINION**<br><br>June 13, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendants Purvi Padia Design LLC, Purvi Padia, and Izabella Tabi's (collectively, "Defendants") Motion to Dismiss Plaintiff Michael Lukacs's ("Plaintiff") Complaint, (D.E. 1-1 ("Compl.")), for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1441. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

I.　　BACKGROUND AND PROCEDURAL HISTORY

On October 6, 2020, Plaintiff retained Purvi Padia Design LLC ("PPD") to provide interior design services for his 25,000 square foot home in New Jersey. (Compl. ¶¶ 5, 11.) Purvi Padia ("Padia") is the owner and head interior designer for PPD, and Izabella Tabi ("Tabi") is PPD's employee and design assistant. (*See id.* ¶¶ 3, 4.) Plaintiff and PPD executed a contract that allowed PPD to unilaterally terminate their agreement "at any time for the following issues: failure to pay,

breach of contract, unethical behavior, mistreatment, failure to comply [to process] and other legal violations." (*Id.* ¶ 15 (quoting D.E. 5 at Ex. A (the "Contract") ¶ 6.c).)[1]

On August 11, 2021, Plaintiff, through counsel, sent a letter to PPD requesting a full and complete accounting of, *inter alia*, the services it performed, the subcontractors it used, the money it paid, and the status of the project. (*See* Compl. ¶ 16.) Plaintiff alleges he did so after discovering that the project was not progressing in a timely manner, that the budget was ballooning, and that the completed work had been done in a substandard manner that caused damage to his home. (*See id.* ¶¶ 21–23.) PPD responded to the letter on August 16, 2021, stating that Plaintiff was in possession of the requested documents and that PPD was terminating the Contract based on Plaintiff's "mistreatment" of PPD and its employees. (*See id.* ¶ 17.)

Plaintiff filed the instant lawsuit on September 9, 2021, in the Superior Court of New Jersey, Law Division, Bergen County, and Defendants removed the suit to this Court on November 3, 2021. (*See* D.E. 1, 1-1.) The Complaint asserts claims for: (1) breach of contract against PPD (Count I); (2) breach of the implied covenant of good faith and fair dealing against PPD (Count II); (3) breach of the duty to construct in a workmanlike manner against all Defendants (Count III); violation of the New Jersey Consumer Fraud Act ("NJCFA" or "CFA") against all Defendants (Count IV); negligent retention and supervision against PPD and Padia (Count V); gross negligence and/or willful or wanton misconduct against all Defendants (Count VI); and *respondeat superior* (Count VII). (Compl. ¶¶ 18–63.) Defendants subsequently moved to dismiss the Complaint and the parties completed briefing. (D.E. 5, 8, 11.)

---

[1] Although Plaintiff did not attach the Contract to his Complaint, this Court may consider it on a Rule 12(b)(6) motion because it is "'integral to or explicitly relied upon in the complaint.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## II.     LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A. Breach of Contract (Count I)

To state a claim for breach of contract under New York law,[2] a plaintiff must allege "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). The only dispute here is with respect to the third element, *i.e.*, whether the Complaint sufficiently alleges that PPD breached the Contract. (*See* D.E. 5-1 at 10–11; D.E. 8 at 8–14; D.E. 11 at 1–3.)

The Contract required PPD to provide, *inter alia*, a "[c]omplete design presentation"; "[d]esign creation and implementation of hard design spaces"; "[b]udget analysis and management"; and "[f]ull purchasing/delivery coordination[.]" (Contract ¶ 2; *see* Compl. ¶ 13.) Plaintiff alleges that PPD breached these provisions by, *inter alia*, (1) failing to complete the required design creation and implementation; (2) failing to manage the budget and allowing it to balloon from approximately $877,000 to approximately $3,000,000; and (3) purchasing goods of inferior quality that caused damage to the home during delivery. (*See* Compl. ¶¶ 21, 22.) Plaintiff sufficiently "allege[s] which agreement was breached and the relevant breached provisions of that contract," *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (citations omitted), and this Court will therefore allow Count I to proceed against PPD.[3]

---

[2] The Contract expressly provides that it "will be governed by and construed in accordance with the laws of the State of New York." (Contract ¶ 7.d.)

[3] Because Plaintiff sufficiently alleges that PPD breached the Contract, this Court does not address the parties' arguments as to whether the Contract expressly required PPD to abide by a specific deadline for completion, adhere to a fixed budget amount, or provide an accounting or certain documents to Plaintiff after termination. (*See* D.E. 5-1 at 11; D.E. 8 at 11–13; D.E. 11 at 2–3.)

**B.     Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

"Every contract in New Jersey contains an implied covenant of good faith and fair dealing . . . . [which] requires a party to refrain from destroying or injuring the right of the other party to receive its contractual benefits." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 74 (D.N.J. 2018) (internal quotation marks and citations omitted).[4]  "[A] party exercising its right to use discretion . . . under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001).  In moving to dismiss, Defendants argue that this claim is barred by New Jersey's economic loss doctrine. (*See* D.E. 5-1 at 4–6.)  "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995).  Thus, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (citation omitted).

Here, Plaintiff's claim for breach of the covenant of good faith and fair dealing generally restates the same allegations which gave rise to his breach of contract claim. (*See* Compl. ¶¶ 27–

---

[4] The parties cite only to New Jersey law to analyze Count II.  In an abundance of caution, however, this Court notes that every contract in New York also includes "an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980) (citation omitted). "The implied covenant prohibits either party from doing anything which would prevent the other party from receiving the fruits of the contract." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1415 (3d Cir. 1993) (applying New York law and citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933)). "[A] party can breach the implied covenant of good faith and fair dealing without breaching any terms of the contract itself, [but] 'it is axiomatic that an implied covenant must comport with the parties' intent and be consistent with the written provisions of the contract.'" *Schnelling v. Prudential Sec., Inc.*, Civ. No. 03-6021, 2004 WL 1243738, at *1 (E.D. Pa. June 3, 2004) (applying New York law and quoting *Canpartners Invs. IV, LLC v. Alliance Gaming Corp.*, 981 F. Supp. 820, 824 (S.D.N.Y. 1997)).

33.) In fact, the Contract explicitly requires the parties "to work together in good faith," expressly incorporating the implied covenant of good faith and fair dealing in the parties' contractual duties. (Contract ¶ 7.b.) Where a contract incorporates an obligation to act in good faith by its terms, "mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 494 (D.N.J. 2009) (citation omitted). Thus, to the extent that Plaintiff's claim for breach of the covenant of good faith and fair dealing merely restates a claim for breach of the express provisions of the Contract and seeks to recover in tort, the claim will be dismissed. *See Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, Civ. No. 12-7141, 2013 WL 6816394, at *7 (D.N.J. Dec. 23, 2013) ("Plaintiff cannot therefore recover in tort for breach of an implied duty that was *expressly* included in the Contract."); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261–62 (N.J. 2002) (explaining that "when the two asserted breaches basically rest on the same conduct," there "can be no separate breach of an implied covenant of good faith and fair dealing").

However, to the extent that Plaintiff seeks to recover damages for contract breaches that are distinct from the express terms of the Contract, Count II is not barred by the economic loss doctrine and this Court will allow it to proceed alongside Plaintiff's breach of contract claim. This may include damages for breaches related to omitted terms that were necessary for the parties' arrangement, such as PPD's obligation to provide an accounting. *See Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002). It may also include PPD's alleged abuse of discretion under the Contract with respect to performance, timeliness, and billing. *See id.* To the extent that these allegations are "extrinsic" to the express terms of the Contract, they are not barred by the economic loss doctrine. *See Chen*, Civ. No. 10-863, 2010 WL 4721514, at *8.

6

### C. Remaining Tort Claims (Counts III and V–VII)

Plaintiff's remaining tort claims are fully barred by New Jersey's economic loss doctrine, which bars tort claims that seek to recover economic damages arising only from a contract. *See Duquesne Light*, 66 F.3d at 618. Plaintiff's own Complaint alleges that his claim for breach of the duty to construct in a workmanlike manner arises out of the Contract. (*See* Compl. ¶ 35 ("An implied term of the contract . . . was that PPD, Padia and Tabi would implement the renovation and design of Plaintiff's home in a workmanlike manner.").) The Complaint's factual allegations do not suggest an independent duty, beyond what was provided for in the Contract, that could give rise to this claim, and dismissal under the economic loss doctrine is therefore appropriate. *See Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (2002) (dismissing plaintiff's tort claims because defendant's failure to use its technical skills "was not a violation of an obligation imposed by law, but rather a breach of its contractual duties"). Even if the economic loss doctrine did not apply, the Contract is plainly one for interior design, not construction, and the duty to construct in a workmanlike manner therefore does not apply. (*See* Contract ¶ 1 (stating that "[t]his contract . . . is for interior design services"), ¶ 2 (twice stating "General Scope: Interior Design" and also stating "CUSTOMIZED FULL SERVICE, INTERIOR DESIGN"), ¶ 3 (structuring PPD's compensation as a "design fee" comprised of a flat fee plus a commission for each item purchased, without specifying compensation for any construction or general contractor services).)[5]

Similarly, Plaintiff's negligence claims arise from the Contract and mostly replead Plaintiff's breach of contract claim in the language of torts, albeit with insufficient factual

---

[5] Although Plaintiff was required to pay PPD for "installers/handyman[] and contractor/construction fees," these were only reimbursements for expenses, and not part of PPD's compensation. (*See* Contract ¶ 4.f.) If anything, the provision suggests that if Plaintiff has a claim for the breach of the duty to construct in a workmanlike manner, it is against his actual general contractor, whom Plaintiff has already sued. (*See* D.E. 11 at 6 n.3 (citing *Lukacs v. M. Harkin Construction, LLC*, No. BER-L-007702-21 (N.J. Super. Ct. Law Div. filed Nov. 23, 2021).)

7

allegations to state a claim.  For example, the Complaint alleges that Defendants negligently hired "subcontractors and vendors [who] were unqualified and/or unlicensed," but does not identify the subcontractors or vendors, identify what damages they caused, or identify what work they were hired to perform, except that they were hired to "perform [] work under the Contract."  (Compl. ¶ 46.)  The Complaint also alleges that Defendants committed gross negligence by breaching "a duty to competently perform the services provided in the Contract including budget management, to retain qualified subcontractors and vendors, and diligently supervise such subcontractors and vendors throughout the term of the Contract." (*Id.* ¶ 51; *see id.* ¶¶ 52–56.)  These allegations about overbilling and negligent hiring on a luxury home renovation, even if true, do not approach the "upper reaches of negligent conduct" that are required for a gross negligence claim, nor do they show that Defendants "create[d] an unreasonable risk of harm to another person because of [their] failure to exercise slight care or diligence."  *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (internal quotation marks and citations omitted) (explaining the requirements for a gross negligence claim).

Because the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, this Court will dismiss Counts III, V, and VI in their entirety for failure to state a claim.  This Court will additionally dismiss these claims as to PPD because they arise from PPD's duties under the Contract and are barred by the economic loss doctrine.  *See, e.g.*, *Davis v. Bankers Life & Cas. Co.*, Civ. No. 15-3559, 2016 WL 7668452, at *11 (D.N.J. Dec. 23, 2016) (dismissing plaintiff's negligent supervision and retention claim under the economic loss doctrine); *Am. Fin. Res., Inc.*, 2013 WL 6816394, at *8 (dismissing gross negligence claim under the economic loss doctrine).  Furthermore, because this Court will dismiss Plaintiff's tort claims against Padia and Tabi, it will also dismiss Plaintiff's *respondeat superior*

claim, which seeks to impose liability on PPD for the individual Defendants' negligence. (*See* Compl. ¶¶ 60–61; D.E. 8 at 35.)

### D.     NJCFA Claim (Count IV)

The NJCFA prohibits "any person" from using "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon" it, "in connection with the sale or advertisement of any merchandise" or that person's "subsequent performance." N.J.S.A. § 56:8-2. "Violations of the CFA can arise under three different categories: (1) '[a]n affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive'; (2) '[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent'; and (3) 'violations of specific regulations promulgated under the [CFA],' which are reviewed under strict liability." *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 64 A.3d 579, 587 (N.J. Super. Ct. App. Div. 2013) (alterations in original) (quoting *Monogram Credit Card Bank of Georgia v. Tennesen*, 914 A.2d 847, 853 (N.J. Super. Ct. App. Div. 2007)).

To bring a successful claim under the NJCFA, a plaintiff "must [allege] three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 12-7849, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).[6] An NJCFA claim is not barred by the economic loss doctrine and can be asserted alongside a breach of contract claim when a plaintiff

---

[6] When the NJCFA claim sounds in fraud, it must also satisfy the heightened pleading standard of Rule 9(b), which requires a plaintiff to allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994).

alleges fraud in the inducement of the contract. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 608 (D.N.J. 2002) ("To [apply the economic loss doctrine to plaintiffs' NJCFA claim] would foreclose plaintiffs from seeking special tort remedies specifically allowed by the New Jersey legislature."); *Barton v. RCI, LLC*, Civ. No. 10-3657, 2011 WL 3022238, at *7 (D.N.J. July 22, 2011) (holding that the economic loss doctrine did not bar NJCFA claim where plaintiff alleged "pre-contractual misrepresentations"). "[W]hen a CFA claim is based on a breach of contract, Plaintiff must allege a 'substantial aggravating circumstance,' demonstrating that the defendant's behavior 'stands outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301–02 (D.N.J. 2019) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997)).

Here, the Complaint alleges that Defendants made several misrepresentations, some of which do not amount to a substantial aggravating circumstance. For example, the Complaint alleges that Defendants represented "that all of the work [would be] of high quality craftsmanship." (Compl. ¶ 7.) However, "[t]he NJCFA distinguishes between actionable misrepresentations of fact and puffery," and does not impose liability for the latter. *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, Civ. No. 08–939, 2009 WL 2940081, at *9 (internal quotation marks and citation omitted); *see also Melville v. Spark Energy, Inc.*, Civ. No. 15-8706, 2016 WL 6775635, at *3 (D.N.J. Nov. 15, 2016). The Complaint also alleges that Defendants failed to inform Plaintiff that Padia and Tabi are not licensed in New Jersey as interior designers. (Compl. ¶ 42.) This omission is not actionable because the New Jersey Administrative Code does not require interior designers to be licensed to provide interior design services, so long as they do not falsely advertise that they are "[l]icensed" or "certified." *See* N.J.A.C. § 13:27-9.15. There is no allegation that

10

Defendants misrepresented Padia or Tabi's licensure status or omitted the information with intent to deceive, and there is no allegation that the lack of licensure caused Plaintiff's alleged losses.

However, the Complaint alleges that Defendants made other misrepresentations that are more specific, more directly connected to Plaintiff's alleged losses, and substantially aggravating. For example, the Complaint alleges that, "[i]n offering their services," Defendants misrepresented that they would "maintain[] budgets, ensur[e] that the timeline for the construction project and for all of the interior furnishings would be met in accordance with [] Plaintiff's specifications, perform[] due diligence on the selection and vetting of contractors for the project, supervis[e] the companies and workers that [Defendants] selected," and obtain "all of the necessary permits and inspections." (Compl. ¶ 7.) Despite Defendants' argument to the contrary, Defendants' alleged conduct was not "'expressly authorized'" by the Contract, (D.E. 11 at 7 (quoting *Urbino v. Ambit Energy Holdings, LLC*, Civ. No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015))), and such conduct would fall "'outside the norm of reasonable business practice[s],'" *Coda*, 409 F. Supp. 3d at 301 (quoting *Suber*, 104 F.3d at 587). This Court will therefore allow Plaintiff's NJCFA claim to proceed against all Defendants.[7]

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and Counts III and V – VII are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may proceed with Counts I, II, and IV in the normal course.  If appropriate, Plaintiff may move to amend his Complaint and replead the dismissed claims following discovery.  An appropriate order follows.

---

[7] Plaintiff's NJCFA claim may proceed against Padia and Tabi as well as PPD because "an individual who commits an affirmative act or knowing omission that the CFA has made actionable can be liable individually" when that "specific individual ha[s] engaged in conduct prohibited by the CFA." *Allen v. V & A Bros.*, 26 A.3d 430, 441–42 (N.J. 2011) (adding that "nothing in the CFA or the relevant precedents suggests that . . . the individual employee or officer will be shielded from liability for the CFA violation he or she has committed").

                                        /s/ Susan D. Wigenton
                              **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         José R. Almonte, U.S.M.J.
             Parties