**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL LUKACS,<br><br>       Plaintiff,<br><br>v.<br><br>PURVI PADIA DESIGN LLC, PURVI PADIA, IZABELLA TABI,:<br><br>     Defendants/Third Party Plaintiffs,<br><br>v.<br><br>RAYMOND MACDONALD, MI3, INC., and RAY'S HOME IMPROVEMENTS,<br><br>     Third Party Defendants. | Civil Action No. 21-19599 (SDW) (JRA)<br><br>**OPINION**<br><br>October 2, 2023 |

**WIGENTON**, District Judge.

Before this Court is Raymond MacDonald and M13, Inc.'s ("Third Party Defendants") Motion to Dismiss (D.E. 58 ("Motion")) Defendant Purvi Padia Design ("PPD"), Purvi Padia ("Ms. Padia"), and Izabella Tabi ("Ms. Tabi") (collectively "Design Defendants") Amended Third Party Complaint (D.E. 50 ("ATPC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Third Party Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**

1

I.  **FACTUAL H ISTORY**

Plaintiff owns a 25,000-square-foot home in Franklin Lakes, New Jersey. (D.E. 27 ¶ 5.) He hired Design Defendants to renovate and make specified changes to the interior of his home. (D.E. 27 ¶ 6.) The parties executed an agreement on October 6, 2020 ("Interior Design Contract"). (D.E. 27 ¶ 17.) To satisfy the construction and renovation aspect of the Interior Design Contract, PPD selected MacDonald as the general contractor. (D.E. 27 ¶ 15.) MacDonald, in turn, submitted a proposed contract on behalf of MI3 (a company owned and/or managed by him) to serve as the construction manager for the project ("Subcontractor Agreement" or "Agreement"). (D.E. 50 ¶¶ 24, 26.) The Subcontractor Agreement provided that MI3 would perform services and supply materials to the interior design services that Plaintiff engaged Design Defendants to perform for the work of the project. (*Id.* ¶ 25). The Agreement also required MI3 to name PPD as an additional insured for the work. However, the Agreement was never signed or otherwise executed by either party. (*Id.* ¶ 29.) Nevertheless, MacDonald assured PPD, who in turn assured Plaintiff, that the specified work could be done within the specified time—six months—and in accordance with the proposed budget. (D.E. 27 ¶ 16.)

On August 11, 2021, Plaintiff, through counsel, sent a letter to PPD requesting a full and complete accounting of, *inter alia*, the services it performed, the subcontractors it used, the money it paid, and the status of the project. (*Id.* ¶ 22.) Plaintiff alleges that he did so after discovering that the project was not progressing in a timely manner, that the budget was ballooning, and that the completed work had been done in a substandard manner that caused damage to his home. (*Id.* ¶¶ 21–22.) Specifically, Plaintiff asserts that PPD, its agents, or subcontractors: "performed interior 'fit and finish' work while the interior remained open to the weather, causing expansion and contraction damage as well as propagation of mold and mildew," (*id.* ¶ 30); "caused other

damage to the property including water damage during demolition and construction, and damage to hardscaping, the driveway, and internal wiring systems that pre-existed the renovation," (*id.* ¶ 30); and failed "to properly supervise [MacDonald], who had engaged in a scheme with the marble and stone [supplier] whereby the [supplier] was overcharging Plaintiff for stone of an inferior quality, misrepresenting the type of stone being provided, purchasing unnecessary quantities of materials, and fabricating and installing the stone in a substandard manner such that most of the stone purchased had to be replaced or was outright rejected," (*id.* ¶ 31.) According to Plaintiff, "when [PPD] learned of the inferior and costly stone, aside from stating to Plaintiff that the costs were absurd, [none of the Design Defendants] took any measures to remediate the issue and ensure that fabrication and installation of the stone was done in accordance with the terms of the [Interior Design Contract]." (*Id.* ¶ 32.)

In response to Plaintiff's August 11, 2021 letter, PPD notified Plaintiff that it was terminating the Contract based on Plaintiff's "mistreatment" of PPD and its employees. (*See id.* ¶ 23.) This suit ensued.

## II.   PROCEDURAL HISTORY

### A. First Amended Complaint ("FAC")

On September 9, 2021, Plaintiff filed his original complaint in New Jersey state court. (D.E. 1 ¶ 1.) The case was removed to federal court. (D.E. 1.) Design Defendants filed their motion to dismiss the complaint on November 24, 2021. (D.E. 5.) This Court granted in part the motion, dismissing without prejudice the tort-based claims (Counts III, V, VI, and VII) and allowing the remaining claims (Counts I, II, and IV) to proceed. (D.E. 12.) On July 11, 2022, Design Defendants filed their answer and counterclaims, (D.E. 17); and on August 1, 2022,

Plaintiff filed his answer to the counterclaims. On October 6, 2022, Magistrate Judge Almonte granted Plaintiff's unopposed motion to amend his complaint.

On November 18, 2022, Plaintiff filed a three-count amended complaint against the Design Defendants.[1] (D.E. 27.)

### B. Amended Third Party Complaint

On December 28, 2022, Design Defendants filed a third-party complaint against MacDonald. (D.E. 33.) On March 20, 2023, after Third Party Defendants filed their motion to dismiss, Design Defendants filed their six-count amended third-party complaint alleging: (1) indemnification against all third-party defendants (Count One); (2) contribution against all third-party defendants (Count Two); (3) contractual indemnification by PPD against MI3 (Count Three); (4) contractual contribution by PPD against MI3 (Count Four); (5) breach of contract by PPD against MI3 (Count Five); and (6) breach of contract by PPD against MI3 (Count Six). (D.E. 50.)

On April 25, 2023, Third-Party Defendants moved to dismiss the ATPC pursuant to Rule 12(b)(6). (D.E. 58.) The parties timely completed briefing. (D.E. 63 & 65.)

### III. <u>LEGAL STANDARD</u>

When considering a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 23 (3d Cir. 2008) (citation omitted). For a

---

[1] The amended complaint alleges the following: (1) breach of contract for failing to complete the project in the permitted timeframe and within the allowed budget and for performing costly, inferior work throughout the renovation process and failing to supervise the renovation process (Count One); (2) breach of implied covenant of good faith and fair dealing for failing to provide an accounting of ordered items, failing to comply with the scheduled timeline, and failing to ensure that the work was performed in a competent manner (Count Two); and (3) violation of the New Jersey Consumer Fraud Act for engaging in false, misleading and deceptive acts or practices in trade or commerce, by failing to comply with its express and implied warranties made regarding the services and work to be performed in the residence, and failing to obtain proper permits, inspections, and certificates for the work performed (Count Three). (D.E. 27).

4

complaint to be adequate, it must be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*; *see also Phillips*, 515 F.3d at 232. If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169–70 (3d Cir. 2013).

## IV. DISCUSSION

### A. Indemnification and Contribution Against Third-Party Defendants (Counts One & Two)

Design Defendants allege that Plaintiff's claim for damages relates to a scheme purportedly executed by Third Party Defendants' purchase and installation of certain stone. Accordingly, they seek indemnity and contribution from the Third Party Defendants. (D.E. 50 ¶¶ 49–51.) Conversely, Third Party Defendants argue that common law indemnity "operates to shift liability from one joint tortfeasor to another." (D.E. 58 at 10.) They aver that because this Court previously dismissed Plaintiff's tort-based claims, the remaining claims against Design Defendants "sound in contract only . . ." and thus common law indemnification is inappropriate. (*Id.* at 11.)

As to Count One, New Jersey recognizes a common law right to indemnity. *United States v. Manzo*, 182 F. Supp. 2d 385, 411 (D.N.J. 2000). This is an "equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *Agere Sys., Inc. v. Advanced Env't Tech. Corp.*, 552 F. Supp. 2d 515, 521 (E.D. Pa. 2008); *see Ronson v. Talesnick*, 33 F. Supp. 2d 347, 357 (D.N.J. 1999) ("common law indemnification is available under New Jersey law to a person who is not at fault but has become responsible in tort for the conduct of another.") *see also Enright*

5

*v. Lubow*, 493 A.2d 1288, 1303 (N.J. Super. Ct. App. Div. 1985) (holding that indemnity "is a right which [i]nures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."). There is little support for the theory that a defendant is entitled to indemnity from a co-defendant or third-party's conduct resulting in a breach of contract. Indeed, courts in this circuit have more recently and consistently reached contrary conclusions.[2]

Here, Design Defendants adequately allege that Third Party Defendants' conduct is the actual cause of the alleged breach of contract and Plaintiff's resulting injury. However, this Court has previously dismissed Plaintiff's tort-based claims, and thus Design Defendants are not permitted to seek common law indemnity against Third Party Defendants for the remaining breach of contract claims under New Jersey law. *See BRG Harrison Lofts Urban Renewal LLC v. Gen. Elec. Co.*, No. 16-6577, 2021 WL 406453, at *7 (D.N.J. Feb. 5, 2021). Accordingly, Third Party Defendants' motion to dismiss Count One is granted.

As to Count Two, a common law cause of action for contribution arises only when two or more persons become liable in tort to the same person for the same harm. *See* Joint Tortfeasor Contribution Law, N.J. Stat. Ann. 2A:53A-1–5; *see also Manzo*, 182 F. Supp. 2d at 411. Under the theory of Joint Tortfeasor Contribution Law, Third Party Defendants are correct that a tort-based claim is usually present[3]; however, in New Jersey, the law is well settled that the

---

[2] *See Enright*, 493 A.2d 1288, 1287 (finding the defendant's breach of contract stemmed solely from the error of its codefendant and thus defendant was entitled to full indemnity of damages.); *but see e.g., BRG Harrison Lofts Urban Renewal LLC v. Gen. Elec. Co.*, No. 16-6577, 2021 WL 406453, at *7 (D.N.J. Feb. 5, 2021) ("Common law indemnity is unavailable . . . based on liability for breach of contract."); *see also, e.g., Mobile Dredging & Pumping Co. v. City of Gloucester, N.J.*, No. 04-4624, 2005 WL 1876080, at *4 (D.N.J. Aug. 4, 2005) ("There is no New Jersey precedent that proposes a party sued for breach of contract can exercise the benefit of common law indemnity to recover from a third party its losses associated with that contractual breach.").
[3] It bears noting that whether a tort-based claim is required for the purpose of New Jersey's Joint Tortfeasor Contribution Law seems to be an open question in New Jersey. Third Party Defendants cite *Walsh Securities, Inc., v.*

6

Comparative Negligence Act provides for third-party contribution claims and applies to Consumer Fraud Act cases. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 608–09 (1997) (holding in Consumer Fraud Act cases "the trial court should determine damages under N.J. Stat. Ann. 2A:15-5.1, apportioning a percentage of fault to each culpable party"); *see also Helmar v. Harsche*, 296 N.J. Super. 194, 210 (App. Div. 1996) (reversing Consumer Fraud Act judgment against realtor because the trial court, although permitting the jury to assess plaintiff's comparative fault, did not permit realtor to assert a third-party contribution claim alleging malpractice by plaintiff's counsel).

Because Count Four of the FAC alleges a violation of the New Jersey Consumer Fraud Act, Design Defendants may claim third party contribution here. Consequently, Third Party Defendants' motion to dismiss Count Two is denied.

### B. Contractual Indemnification by PPD against MI3 (Count Three)

Under New Jersey Law[4], a right to indemnity can arise expressly through a contract or impliedly through the nature of the parties' relationship. *George M. Brewster & Son v. Catalytic Constr. Co.,* 17 N.J. 20, 28 (1954). With regard to express contractual language, New Jersey law directs courts to construe a contractual indemnity provision in the same way it construes any other part of a contract—with the goal of determining the parties' intent. *Kieffer v. Best Buy*, 14 A.3d 737, 743 (2011). This Court gives contractual terms their plain meaning. *Id.* (internal citation omitted). Thus, "[i]f the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" *Id.* (quoting *Ramos v. Browning Ferris Indus. of S. Jersey,*

---

*Cristo Property Management, Ltd.*, and argue that the court determined that contribution can only be granted if the claims arise in tort. No. 97-3496, 2009 WL 5064757 *1 (D.N.J. Dec. 16, 2009). This is not accurate. The court instead determined that for a contribution claim to be appropriate, the claims must be the same or similar. In that case, the tort claims, and the contract claims for which contribution was sought were not the same or similar. *Id.* The court explained that "under New Jersey law there are occasions when a contract claim may have attributes that will permit it to give rise to a claim for contribution" but determined that case was not one of them. *Id.* at *7.

[4] The Subcontractor Agreement expressly provides that it "shall be governed by the laws of the State of New Jersey, both as to interpretation and performance." (D.E. 50 Ex. C ¶ VIII.B).

7

*Inc.*, 510 A.2d 1152, 1159 (1986)). This is because a party is ordinarily responsible for "its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language." *Id.*

Here, the ATPC states that "[t]o the extent PPD is found liable for any portion of the damages Plaintiff asserts against it, PPD seeks indemnification from MI3 to the extent any contractual provisions provide for such indemnification." (D.E. 50 ¶ 62.) The Subcontractor Agreement contains an indemnification provision that provides:

> [T]he Client and the Owner shall indemnify, defend and hold harmless MI3, Inc. and its officers, directors, employees, shareholders, and agents (collectively, the "MI3, Inc. Indemnities") from and against all claims, damages, losses and expenses (including legal fees and disbursements) arising out of or in connection with the Project that may be imposed on, incurred by or asserted against MI3, Inc. Indemnities to the extent caused by (i) the negligent or unlawful acts or omission of the Client, the Owner or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and (ii) any default by the Client or the Owner under this Agreement, regardless of whether or not such claims, damages losses and expenses are caused in part by the MI3, Inc. indemnities, the Client and the Owner will also require that MI3, Inc. be named as an additional insured on all property and casualty insurance for the property and liability insurance policies required from and contractor, or other service provider engaged on the project.

(D.E. 50 Ex. C ¶ VIII.D.) This provision, read plainly, does not require MI3 to indemnify PPD but rather the other way around. Indeed, nowhere in the agreement is MI3 expressly required to indemnify PPD and the ATPC does not point to any specific provision therein to support Design Defendants' claim for contractual indemnification.

In the absence of an express provision, Design Defendants assert that Third Party Defendants have an implied duty to indemnify because of their "special legal relationship." *Katz v. Holzberg*, No. 13-1726, 2013 WL 5946502 at *2 (D.N.J. Nov. 4, 2013). "As a general rule, a third party may recover on a theory of implied indemnity . . . only when a special legal relationship exists . . . and the liability of the third party is vicarious." *Ramos* 510 A.2d at 1158 (internal citation omitted). New Jersey courts have found special relationships in cases involving principal

8

and agent[5], bailor and bailee, and lessor and lessee[6]. *Id.* at 1158. Vendor and vendee relationships, however, do not suffice. *Id.* ("[T]he relationship between vendor and vendee will not support a claim for implied indemnification by a third-party vendor against an employer-vendee."). "To be entitled to indemnification as one who is secondarily or vicariously liable, a party must be without fault." *Id.* at 1159. "Ordinarily, a party who is at fault may not obtain indemnification for its own acts." *Id.* (citing *Cartel Capital Corp. v. Fireco of N.J.*, 410 A.2d 674, 684 (1980)).

    Here, Design Defendants argue that the FAC created the special relationship between them and Third Party Defendants. Specifically, PPD alleges that a special legal relationship exists because Plaintiff's claims against it involved construction, demolition, and renovation work—obligations assumed by MI3—and because the FAC asserts claims against "PPD, through its agents, or subcontractors"—which includes MI3. (D.E. 63 at 12.) A complaint cannot form the basis of the special legal relationship in lieu of an express indemnification agreement and none of the cases cited by PPD in its opposition say otherwise. An agreement between parties may suffice to establish the existence of a special legal relationship, but much is unknown about the relationship between the defendants beyond what has been alleged and the details in the unexecuted Agreement. Thus, Design Defendants have adequately alleged a legal relationship, but it is unclear the sort of legal relationship being alleged (*i.e.*, employer and employee, vendor and vendee, etc.). In New Jersey the distinction matters. *Ramos*, 510 A.2d at 1158. Further discovery will determine the existence of an actual special legal relationship. As such, Third Party Defendants' motion to dismiss Count Three is denied without prejudice.

---

[5] *see Hagen v. Koerner*, 166 A.2d 784, 787 (App.Div.1960).
[6] *Ruvolo v. United States Steel Co.*, 354 A.2d 685, 639 (Law. Div. 1976).

### C. Remaining Contract Based Claims

Design Defendants have also alleged claims for contractual contribution (Count Four), breach of contract for failure to name PPD as additional insured (Count Five), and breach of contract for failure to perform (Count Six). As previously mentioned, the Subcontractor Agreement is unsigned. "A bedrock principle of contract law is that absent fraud, duress, mutual mistake or unconscionability . . . a signed contract will bind both parties." *JPC Merger Sub LLC v. Tricon Enters., Inc.*, 286 A.3d 1186, 1198 (App. Div. 2022) (citing 2 Richard A. Lord, Williston on Contracts § 6:44 (4th ed. 2022)). A signed agreement demonstrates the intent of the parties, and the parties are conclusively presumed to understand and assent to its terms and legal effect. *See Agere Sys., Inc.*, 552 F. Supp. 2d at 524 (applying New Jersey and Pennsylvania law, the court held that the indemnity provision was unenforceable because the contract was not signed, and the parties' conduct did not conform to terms of purported contract).

Given that the Agreement at issue is unsigned, it is unclear the nature of the parties' relationship and what the parties agreed to especially as it relates to performance and liability coverage. Third Party Defendants are alleged to have undertaken "the full suite of general contractor-and construction manager-related duties and responsibilities necessary to perform the demolition, construction, and renovation work Plaintiff desired at the Property," (D.E. 50 ¶ 30), but further discovery will be necessary to demonstrate the true nature of the relationship and agreement between the collective defendants before a decision can be made as to the conduct and intent of the parties to an unsigned contract. Accordingly, the motion to dismiss Counts Four, Five, and Six is denied.

V.   **CONCLUSION**

For the reasons set forth above, Third Party Defendants motion to dismiss the ATPC is **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.** An appropriate order follows.

/s/ Susan D. Wigenton
   **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:   Parties
   Jose R. Almonte, U.S.M.J.

11