**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL LUKACS<br><br>    Plaintiff,<br><br>v.<br><br>PURVI PADIA DESIGN LLC,<br>PURVI PADIA, and<br>IZABELLA TABI,<br><br>    Defendants / Third-Party Plaintiffs,<br><br>    and<br><br>RAYMOND MACDONALD,<br>MI3, INC., and<br>RAY'S HOME IMPROVEMENTS<br><br>    Third-Party Defendants, | Civil Action No. 21-19599 (SDW) (AME)<br><br>**OPINION**<br><br>November 18, 2025 |

**WIGENTON**, District Judge.

    Before this Court are two motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Defendants/Third-Party Plaintiffs Purvi Padia Design LLC ("PPD"), Purvi Padia ("Padia"), and Izabella Tabi's ("Tabi") (collectively, "Defendants") seek summary judgment as to Plaintiff Michael Lukacs's ("Plaintiff") claims and seek to preclude the expert report and testimony of Paul L. Johnson (D.E. 106 & 108.) Third-Party Defendants Raymond MacDonald ("MacDonald") and MI3, Inc. d/b/a Ray's Home Improvements ("Ray's") (collectively, "Third-Party Defendants") seek summary judgment as to Defendant's remaining third-party claims (D.E. 105.) Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral

1

argument pursuant to Rule 78. Having considered all the submissions filed in connection with these Motions, this Court makes the following determinations.

I. **FACTUAL BACKGROUND**[1]

This dispute arises out of an interior design contract between Plaintiff and PPD to provide interior design services for his 25,000 square foot home in New Jersey. (Am. Compl., D.E. 27 ("AC") ¶¶ 5–6.) The parties are presumed to be familiar with this matter and this Court accordingly limits its discussion of the factual and procedural background to only the facts pertinent to the instant decision.

The following facts are undisputed. On October 6, 2020, Plaintiff and PPD executed a contract for interior design services at Plaintiff's home. (Defs' Statement ¶ 6; Pl.'s Statement ¶ 6.) Plaintiff has no recollection of any communications with PPD before executing the contract. (Defs' Statement ¶ 12; Pl.'s Statement ¶ 12.) Plaintiff did not know why his wife, Michelle, decided to hire Defendants nor did Michelle inquire whether Defendants had any specific licenses. (Defs' Statement ¶¶ 14–15; Pl.'s Statement ¶¶ 14–15.)

Two budgets existed for the project, one for interior design and a separate budget for the construction work. (Defs' Statement ¶ 25; Pl.'s Statement ¶ 25.) Based on a referral, on November 16, 2020, Padia emailed MacDonald to inquire about his willingness to be retained for Plaintiff's renovation project. (Pl.'s Statement ¶ 22; Defs' Reply Statement ¶ 22.) PPD and MacDonald did not execute a written contract. (Defs.' TP Statement ¶ 9; TP Defs' Statement ¶ 9.) Neither party

---

[1] Facts cited in this opinion are drawn primarily from Third-Party Defendants' Statement of Undisputed Facts (D.E. 105-1 at 1–2 ("TP Defs' Statement")); PPD's Response Statement of Undisputed Facts (D.E. 114-1 ("Defs' TP Statement")); PPD's Statement of Undisputed Facts (D.E. 106-2 ("Defs' Statement")); Plaintiff's Response & Counter-Statement of Undisputed Facts (D.E. 116-1("Pl.'s Statement")); and PPD's Response to Plaintiff's Response & Counter-Statement of Undisputed Facts (D.E. 120-1 ("Defs' Reply Statement")).

can recall any verbal contract between PPD and Third-Party Defendants. (Defs.' TP Statement ¶¶ 7–8; TP Defs' Statement ¶¶ 7–8.) Despite no executed contract between PPD and MacDonald, on November 24, 2020, MacDonald became the construction manager and general contractor for the renovation project. (Defs' Statement ¶ 40; Pl.'s Statement ¶ 40; TP Defs' Statement ¶ 2.) Subsequently, on May 5, 2021, Plaintiff terminated Third-Party Defendants due to alleged budget issues and project delays. (Defs' Statement ¶ 56; Pl.'s Statement ¶ 56; TP Defs' Statement ¶ 3.)

After Third-Party Defendants were terminated, on May 7, 2021, Michael Harkin ("Harkin") was hired by Plaintiff to complete the renovation project. (Defs' Statement ¶ 60; Pl.'s Statement ¶ 60.) Harkin completed enough of the renovation to allow Plaintiff to move back into the home in August 2021. (Defs' Statement ¶ 81; Pl.'s Statement ¶ 81.) However, Plaintiff terminated Harkin in November 2021 prior to the project's completion. (Defs' Statement ¶¶ 82–83; Pl.'s Statement ¶¶ 82–83.)

Plaintiff subsequently made a claim to Chubb Insurance Company of New Jersey ("Chubb") for reimbursement of alleged damaged hardwood flooring related to the renovation project, seeking an advance of $3,000,000. (Defs' Statement ¶ 95; Pl.'s Statement ¶ 95.) On March 1, 2023, Plaintiff filed a lawsuit against Chubb and AIG Property Casualty Company ("AIG") in the Superior Court of New Jersey, Law Division, Bergen County. (Defs' Statement ¶ 96; Pl.'s Statement ¶ 96.) During the course of the state court litigation, Plaintiff hired Paul Johnson ("Johnson") as his proffered construction expert against Chubb and AIG. (Defs' Statement ¶ 101; Pl.'s Statement ¶ 101.) In that matter, on September 24, 2024, Johnson issued an expert report opining that there were no construction defects with respect to the hardwood flooring installation in the home nor did he observe an inferior execution of the floor installation. (Defs' Statement ¶¶ 101–102; Pl.'s Statement ¶¶ 101–102.)

In this instant matter, which was filed in 2021, Plaintiff also proffers Johnson as an expert in construction and luxury home design. (Defs' Statement ¶ 85; Pl.'s Statement ¶ 85.) On October 30, 2024, Johnson issued his written expert report, concluding, in part, that the flooring was defective due to poor installation. (*Id.*) Additionally, during his deposition in this matter, on March 4, 2025, Johnson testified that hardwood damage was caused by installation failure. (Defs' Statement ¶ 87; Pl.'s Statement ¶ 87.) Both statements directly contradict the opinions offered by Johnson in the state court matter, which was issued only thirty-six (36) days prior to his written expert report in this matter.

## II. **PROCEDURAL HISTORY**

Plaintiff filed the instant lawsuit on September 9, 2021, in the Superior Court of New Jersey, Law Division, Bergen County, which PPD removed to this Court on November 3, 2021. (D.E. 1, 1-1.) The Complaint asserted claims for: (1) breach of contract against PPD LLC (Count I); (2) breach of the implied covenant of good faith and fair dealing against PPD LLC (Count II); (3) breach of the duty to construct in a workmanlike manner against all Defendants (Count III); (4) violation of the New Jersey Consumer Fraud Act ("NJCFA" or "CFA") against all Defendants (Count IV); (5) negligent retention and supervision against PPD and Padia (Count V); (6) gross negligence and/or willful or wanton misconduct against all Defendants (Count VI); and (7) respondeat superior (Count VII). (Compl. ¶¶ 18–63.) PPD subsequently moved to dismiss the Complaint. (D.E. 5.)

On June 13, 2022, this Court issued an opinion dismissing Plaintiff's tort claims against PPD and permitting Plaintiff an opportunity to amend his claims. (D.E. 12.) Plaintiff filed his Amended Complaint on November 18, 2022, this time reasserting his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the NJCFA against

all Defendants, including individual Defendants Padia and Tabi. (D.E. 27.) Plaintiff never filed any direct claims against MacDonald, Ray's or MI3.

On December 28, 2022, PPD filed a Third-Party Complaint naming MacDonald, MI3, and Ray's as Third-Party Defendants. (D.E. 33.) The Third-Party Complaint asserted claims for: (1) indemnification and contribution against all Third-Party Defendants (Counts I and II); (2) contractual indemnification and contribution against MI3 and Ray's (Counts III and IV); (3) breach of contract for failure to name PPD as an additional insured against MI3 (Count V); and (4) breach of contract for failure to name PPD as an additional insured against Ray's (Count VI). (*Id.*) On March 20, 2023, PPD amended their Third-Party Complaint to withdraw their contractual claims against Ray's. (D.E. 50.) Third-Party Defendants subsequently moved to dismiss the Amended Third-Party Complaint. (D.E. 58.)

On October 2, 2023, this Court issued an opinion dismissing PPD's common-law indemnification claim but permitted PPD's remaining common-law contribution and contractual claims to proceed. (D.E. 73.) Defendants and Third-Party Defendants now move for summary judgment. (D.E. 107 ("SJ Mot. II") and D.E. 105 ("SJ Mot. I.")) All briefing was timely completed.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a

5

dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). Although courts view all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, the nonmoving party cannot simply rely on the "mere allegations or denials of his pleadings." *Id.* at 288. Similarly, "[b]are assertions, conclusory allegations, or suspicions will not suffice." *Id.* at 288–89 (quoting *Central Dauphin*, 765 F.3d at 268–69). If the nonmoving party fails to make an adequate showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

On summary judgment, the court may not make credibility determinations or weigh the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). "[T]he court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial … constru[ing] the facts and inferences in the light most favorable to the non-moving party."

6

*Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, Civ. No. 07-321, 2008 WL 2783339 (D.N.J. July 16, 2008).

There is, however, "no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor." *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 696 (D.N.J. 1992). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Am. Seating Co. v. Archer Plastics Inc.*, Civ. No. 11-53, 2012 WL 2937338, at *6 (D.N.J. July 18, 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory affidavits and testimony, when contradicted by other record evidence, are insufficient to create a genuine dispute of material fact. *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (finding "self-serving deposition testimony" which conflicted with deponent's "earlier testimony and … other record evidence … insufficient to raise a genuine issue of material fact"); *Marrin v. Cap. Health Sys., Inc.*, Civ. No. 14-2558, 2017 WL 2369910, at *17–20 (D.N.J. May 31, 2017) (granting summary judgment despite nonmovant's "conclusory" affidavit contradicted by record evidence).

## IV.     DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants move for summary judgment as a matter of law asserting that: Counts I (breach of contract) and II (breach of the implied covenant of good faith and fair dealing) should be dismissed because Plaintiff cannot show that Defendants breached the contract or acted with bad faith; Count III (violation of New Jersey's Consumer Fraud Act) should be dismissed because

Plaintiff does not allege any pre-contractual fraud or misrepresentations by Defendants; and lastly, Plaintiff's claims should be dismissed pursuant to judicial estoppel.

### i. Count I – Breach of Contract

Defendants seek summary judgment on Plaintiff's claims of breach of contract. Under New York law[2], a breach of contract claim requires proof of: (1) an agreement; (2) adequate performance by the plaintiff; (3) breach by the defendant; and (4) damages. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F. 3d 793, 799 (2d Cir. 2011) (citations omitted).

Plaintiff asserts that Defendants breached the contract by failing to comply with several contractual obligations such as meeting a June 2021 deadline and failing to adequately perform budgeting services throughout the project. (SJ Opp. II at 2.) Plaintiff further contends that Defendants failed to adequately supervise their agents and subcontractors, which led to unnecessary costs and delays. (AC ¶ 29.) In response, Defendants maintain that the contract did not contemplate a June 2021 deadline nor did PPD exceed the proposed budget. (SJ Mot. II at 14.)

The evidence before this Court presents genuine issues of material facts regarding PPD's role and duties in connection with the renovation project. However, neither Padia nor Tabi are parties to the contract between PPD and Plaintiff. Because no contractual relationship existed between Plaintiff and the individual Defendants Padia and Tabi, Plaintiff's claims for breach of contract fail as a matter of law. *See Luckow v. RBG Design-Build, Inc.*, 156 A.D.3d 1289, 1291 (N.Y. App. Term. 2017) (citations omitted) ("[A]party may not assert a cause of action for breach of contract against a person or entity with whom it is not in privity."). Accordingly, summary

---

[2] The Contract expressly provides that it "will be governed by and construed in accordance with the laws of the State of New York." (D.E. 5-2, ¶ 7.d.)

judgment is granted on Plaintiff's breach of contract claim (Count I) for individual Defendants Padia and Tabi, but denied as to Defendant PPD.

### ii. Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants seek summary judgment on Plaintiff's claims of breach of the implied covenant of good faith and fair dealing.[3] "Every contract in New Jersey contains an implied covenant of good faith and fair dealing.... [which] requires a party to refrain from destroying or injuring the right of the other party to receive its contractual benefits." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 74 (D.N.J. 2018) (internal quotation marks and citations omitted). "[A] party exercising its right to use discretion ... under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001).

The doctrine also "permits the inclusion of terms and conditions which have not been expressly set forth in the written contract," and allows "redress for the bad faith performance of an agreement even when the defendant has not breached any express term." *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002). The party alleging a breach of the implied covenant of good faith and fair dealing "must provide sufficient evidence to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *China Falcon Flying Ltd*, 329 F.

---

[3] The parties cite only to New Jersey law to analyze Count II. However, this Court also notes that every contract in New York includes "an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980) (citation omitted).

9

Supp. 3d at 74 (citing *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94, 106 (3d Cir. 2013)).

Plaintiff argues that Defendants breached the implied covenant of good faith and fair dealing due to issues relating to performance and timeliness. Specifically, Plaintiff states that the parties intended for a June 2021 completion date, which Defendants deny. However, according to MacDonald's deposition testimony, Padia conveyed to him a June 2021 completion date. (Pl.'s Statement ¶ 24, D.E. 115-8, Ex. 6 T32:20-33:1; D.E. 105-3, Ex. B T31:22-32:11.) Additionally, Padia's email communications with MacDonald refer to a "non-negotiable" move-in date by mid-June. (D.E. 115-21, Ex. 19.) Based on such facts, although the contract did not include a specified timeline for project completion, a reasonable jury could conclude that Plaintiff and PPD contemplated a June 2021 completion date. As such, summary judgment is not warranted because a genuine issue of material fact exists regarding whether, among other things, PPD was required to complete the renovation project by June 2021. Similarly, this Court cannot make any determinations regarding the performance of PPD. Accordingly, for the same reasons summary judgment cannot be granted on Plaintiff's breach of contract claim (Count I), it cannot be granted on the breach of the implied covenant of good faith and fair dealing (Count II). Thus, PPD's Motion for Summary Judgment as to Count II is denied.[4]

### iii. Count III – Violation of the New Jersey Consumer Fraud Act

Plaintiff brings a claim under New Jersey's Consumer Fraud Act. To state a claim under the NJCFA, a plaintiff must plead: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss."

---

[4] Summary judgment is appropriate for individual Defendants, Padia and Tabi, as Plaintiff makes no argument as to why Padia and Tabi should be held individually liable for breach of the implied covenant of good faith and fair dealing.

*D'Agostino v. Maldonado*, 78 A. 3d 527, 536–37 (N.J. 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A. 2d 741, 749 (N.J. 2009)); *see also Frederico v. Home Depot*, 507 F. 3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–65 (N.J. 1994)). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F. 3d at 202 (quoting *Cox*, 647 A. 2d at 462).

This Court previously held that the economic loss doctrine did not bar Plaintiff's NJCFA claim and allowed the claim to proceed because Plaintiff alleged fraud in the inducement of the contract with PPD. *See Lukacs v. Purvi Padia Design LLC*, No. 21-19599, 2022 WL 2116868, at *5 (D.N.J. June 13, 2022) ("An NJCFA claim is not barred by the economic loss doctrine and can be asserted alongside a breach of contract claim when a plaintiff alleges fraud in the inducement of the contract.") (citing *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 608 (D.N.J. 2002)). Here, summary judgment is appropriate because Plaintiff does not point to any evidence in the record of any pre-contractual fraud or misrepresentations made by Defendants to induce him into entering the contract. The only pre-contractual allegation made by Plaintiff is his belief that Defendants were "licensed interior designers," which this Court has already determined to not be actionable under the NJCFA.[5] *See* (D.E. 12.) Importantly, Plaintiff testified that he did not have any recollection of any communications with Defendants before executing the contract nor did he know why his wife decided to hire Defendants and what information she

---

[5] This Court further notes that Plaintiff's reliance on this Court's previous decision (D.E. 12), which outlined Defendants' alleged misrepresentations, is misplaced as the procedural posture and legal standard for a motion to dismiss filed pursuant to Rule 12(b)(6) and a motion for summary judgment filed pursuant to Rule 56 are different. Namely, for purposes of a motion to dismiss, this Court accepted Plaintiff's allegations as true and did not have the benefit of a developed factual record.

considered. (Defs'. Statement ¶¶ 12, 14; D.E. 106-9, Ex. 4 T37:8-39:13); Pl.'s Statement ¶¶ 12, 14.)

Plaintiff cannot survive a motion for summary judgment by simply relying on bare allegations that are unsupported by the factual record and lack specificity as to the conduct alleged. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (stating that a non-movant must present more than mere allegations or denials to successfully oppose summary judgment); *see also Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2002) (highlighting that the nonmoving party may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant."). Accordingly, summary judgment is granted on Plaintiff's NJCFA (Count III) claim.

### B. Defendants' Motion to Preclude Plaintiff's Expert Paul L. Johnson

Where a party moves to preclude expert testimony, the reviewing court must ascertain whether the testimony is admissible as to those aspects under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *In re Blood Reagents Antitrust Litig.*, 783 F. 3d 183, 187–88 (3d Cir. 2015). In deciding whether to admit expert testimony, the trial court is a "gatekeeper" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (applying *Daubert* standard to all expert testimony).

FRE 702's requirements can be summed up in three words: qualification, reliability, and fit. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F. 3d 396, 404 (3d Cir. 2003). To be qualified as an expert, FRE 702 requires a witness to have "'specialized knowledge' regarding the area of testimony. The basis of this specialized knowledge 'can be practical experience as well as

12

academic training and credentials.'" *Waldorf v. Shuta*, 142 F. 3d 601, 625 (3d Cir. 1998) (quoting *Am. Tech. Res. v. United States*, 893 F. 2d 651, 656 (3d Cir. 1990)). The Third Circuit has "stress[ed] that ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training." *Id.* at 626. Furthermore, the specialized knowledge requirement is to be interpreted liberally and, consequently, "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig. (Paoli II)*, 35 F. 3d 717, 742 n.8 (3d Cir. 1994) (citing *In re Paoli R.R. Yard PCB Litig. (Paoli I)*, 916 F. 2d 829, 855 (3d Cir. 1990), *cert. denied*, 499 U.S. 961 (1991)).

As to reliability, FRE 702 and *Daubert* require an expert's opinion to be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F. 3d at 742 (citing *Daubert*, 509 U.S. at 590). Courts generally consider a variety of factors set out by the Supreme Court in *Daubert*, yet those factors are "neither exhaustive nor applicable in every case." *Pineda v. Ford Motor Co.*, 520 F. 3d 237, 248 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806–07 (3d Cir. 1997)). Ultimately, the trial court's inquiry focuses "on principles and methodology and not on the conclusions they generate. The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." *Kannankeril*, 128 F.3d at 807 (citing *In re Paoli*, 35 F. 3d at 744).

Lastly, to satisfy the fit requirement, the expert analysis must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *U.S. v. Downing*, 753 F. 2d 1224, 1242 (3d Cir. 1985)). Whether the analysis fits with the case "depends in part on 'the proffered connection between the scientific research or test result

13

to be presented and particular disputed factual issues in the case.'" *Paoli II*, 35 F.3d at 743 (quoting *Downing*, 753 F.2d at 1237).

Defendants seek to preclude the October 2024 report and March 2025 deposition testimony of Plaintiff's expert Paul Johnson. Defendants argue that Johnson's October 2024 report and testimony fail each of FRE 702's criteria and fail to comply with the requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B). (D.E. 108-1 at 1.) Specifically, Defendants assert that Johnson's conclusions are *ipse dixit* opinions, which conflict with previous opinions in separate cases regarding the same Property, and he fails to identify the basis for his conclusions. (*Id.* at 1, 9–36.) Lastly, Defendants submit that Johnson's conclusions are inadmissible as they lack qualification, reliability, and fit. (*Id.*)

Plaintiff counters that Johnson is qualified to provide expert opinions in this action due to his "decades of experience in the luxury home renovation industry," and his previous experience testifying as an expert witness concerning residential construction matters. (D.E. 117 at 8–9.) Plaintiff maintains that Johnson's opinions are admissible as they do not contain legal conclusions, and his conclusions are supported by facts in the record. (*Id.* at 8–26.) Lastly, Plaintiff contends that the probative value of Johnson's opinions is outweighed by the risks of confusing or misleading a jury. (*Id.*)

Johnson's October 2024 report contains four opinions. (D.E. 108-1 at 5–6; D.E. 108-5 at 3–4.) Opinion 1 states that PPD's contract with Plaintiff made PPD the "primary entity responsible for oversight of the entire project." (*Id.*) This opinion offers an improper legal interpretation of the contract as it seeks to define Defendants' duties under the contract. *See Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F. 3d 195, 217 (3d Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion.") (citing *United States v. Leo*, 941 F. 2d 181, 195–96 (3d Cir. 1991)).

14

Next, Opinion 2 states that Defendant Padia was "negligent and was the proximate cause of the significant damage to the Plaintiff's home." (D.E. 108-5 at 3–4.) Opinion 2 suffers from the same fatal defect as Opinion 1 as it is a glaring improper legal conclusion. As an expert witness, Johnson is prohibited from rendering a legal opinion and cannot opine on whether Padia was negligent and that such negligence was the proximate cause of damage to Plaintiff's home. *Berkeley Inv. Grp., Ltd.*, 455 F. 3d at 217.

Opinion 3 concludes that "Padia and PPD misrepresented her abilities to Plaintiff and hid cost overruns known to her." (D.E. 108-5 at 3–4.) Opinion 3 is not reliable nor "sufficiently tied to the facts of the case" and will not "aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *U.S. v. Downing*, 753 F. 2d 1224, 1242 (3d Cir. 1985)). Johnson provides no basis for this opinion and his report fails to mention any specific misrepresentation made by PPD or Padia to Plaintiff. Moreover, such a conclusory statement is not helpful to a jury as a juror can determine whether Defendants made misrepresentations to Plaintiff without the need for the specialized knowledge, skill, or training of an expert. *See* FRE 702(a). Consequently, Opinion 3 does not satisfy the *Daubert* standard.

Lastly, Opinion 4 relates to damages and avers that Plaintiff's damages include, but are not limited by, the costs to: retain new design professionals; remove and replace all of the hardwood flooring; replace all stonework; and repaint the entire interior of the home. (D.E. 108-5 at 3–4.) Johnson's opinion regarding damages is unreliable as it is conclusory and not sufficiently tied to the facts of the case. Whether an analysis fits with a case "depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" *In re Paoli R.R. Yard PCB Litig. (Paoli II)*, 35 F. 3d 717, 743 (quoting *Downing*, 753 F.2d at 1237.) Johnson does not outline any reliable methodology, nor does he

point to any industry standard within his opinion. Additionally, this Court emphasizes that Johnson's conclusions regarding damages, specifically the need to replace all of the hardwood flooring, are directly contradicted by another report he issued based on the same site examination in a separate lawsuit. This inconsistency is beyond conducting cross-examination at trial as Johnson's conclusions are patently unreliable.

For the reasons explained above, this Court finds that under FRE 702 and *Daubert*, the October 2024 report and March 2025 testimony of Johnson is inappropriate and inadmissible. All the challenged opinions suffer the same fatal defects: Johnson fails to provide any basis for the opinions and the opinions either contain impermissible legal conclusions or are not helpful to a jury. Accordingly, Johnson's expert report and testimony will be excluded.[6]

### C. Third-Party Defendants' Motion for Summary Judgment

#### i. Counts II and IV – Contribution and Contractual Contribution[7]

PPD asserts claims for contribution (Count II) and contractual contribution (Count IV.) PPD states that contribution applies because Third-Party Defendants are liable for the same injuries alleged by Plaintiff, thus New Jersey's Joint Tortfeasor Contribution Law and Comparative Negligence Act applies.

New Jersey law is clear that the Comparative Negligence Act provides for third-party contribution claims and applies to Consumer Fraud Act cases. *See Lukacs v. Purvi Padia Design LLC,* No. 21-19599, 2023 WL 6439877, at *4 (D.N.J. Oct. 2, 2023.) As such, this Court previously

---

[6] PPD asserts that Plaintiff's action should be dismissed pursuant to judicial estoppel because Plaintiff has advanced contradicting factual theories and expert evidence to recover overlapping alleged damages in different forums. The Third Circuit has emphasized that a district court "may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779–80 (3d Cir. 2001) (citations omitted). As such, judicial estoppel is not warranted because a lesser sanction, the exclusion of Johnson's testimony and report, is an adequate remedy to address the alleged harm.

[7] The only remaining claims in Defendants' Third-Party Complaint are claims for common law and contractual contribution, contractual indemnification, and breach of contract.

ruled that PPD's third-party contribution claims could proceed only because Plaintiff alleged a violation of New Jersey's Consumer Fraud Act. *Id.* However, as stated above, Plaintiff's NJCFA claims are dismissed hence, PPD's contribution and contractual contribution claims cannot proceed.

Similarly, courts within this District have declined to apply the New Jersey Joint Tortfeasor Contribution Law when the contribution claim does not arise in tort. *See Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, 723 F. Supp. 3d 363, 376 (D.N.J. 2024) (stating that the New Jersey Joint Tortfeasors Contribution Law requires an underlying tort); *Trustees of Princeton Univ. v. Tod Williams Billie Tsien Architects, LLP*, No. 19-21248, 2021 WL 9667971, at *8 (D.N.J. Jan. 29, 2021) (finding no contribution claim where pleading "at most set forth a claim that [third-party defendant] breached its contract" and there were no allegations that third-party defendant "was liable in tort"); *Meyers v. Heffernan*, No. 12-2434, 2014 WL 3343803, at *10 (D.N.J. July 8, 2014) (no contribution claim where "underlying action involved contract-based claims" as the parties were not "joint tortfeasors")). Therefore, since Plaintiff's NJCFA claims are dismissed, the New Jersey Joint Tortfeasors Contribution Law does not apply to this matter.

Accordingly, Third-Party Defendants' Motion for Summary Judgment as to PPD's contribution and contractual contribution is granted.

      **ii.    Counts III, V, and VI – Contractual Indemnification and Breach of Contract**

Third-Party Defendants seek summary judgment on PPD's contractual claims: contractual indemnification (Count III); breach of contract for failure to name PPD as additional insured; (Counts V); and breach of contract for failure to perform (Count VI). To establish a claim for breach of contract under New Jersey law, a party must prove that: (1) the parties entered into a contract, containing certain terms; (2) plaintiffs performed what was required under the contract;

17

(3) defendant did not fulfill its obligation under the contract; and (4) defendant's breach caused a loss to plaintiffs. *See Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).

Under New Jersey Law, a right to indemnity can arise expressly through a contract or impliedly through the nature of the parties' relationship. *George M. Brewster & Son v. Catalytic Constr. Co.*, 109 A.2d 805, 809 (N.J. 1954). In the absence of an express provision, "[a]s a general rule, a third party may recover on a theory of implied indemnity ... only when a special legal relationship exists ... and the liability of the third party is vicarious." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1158 (N.J. 1986). (internal citation omitted). New Jersey courts have found examples of the special relationship that will support a third party's claim for indemnification to include that of principal and agent; bailor and bailee; and lessor and lessee. *Id.* Vendor and vendee relationships, however, do not suffice. *Id.* ("[T]he relationship between vendor and vendee will not support a claim for implied indemnification by a third-party vendor against an employer-vendee."). "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *SGS U.S. Testing Co., Inc. v. Takata Corp.*, Civ. No. 09–6007, 2012 WL 3018262, at *5 (D.N.J. July 24, 2012).

PPD has not sufficiently established the existence of a genuine issue of material fact as to its contractual claims. In fact, both parties concede the absence of a fully executed written contract and cannot identify the existence of any verbal agreement. (TP Defs' Statement ¶¶ 6–9, D.E. 105-3, Ex. B T41:15-18; T45:13-18, D.E. 105-6, Ex. E T108:8-109:19); (Defs' TP Statement ¶¶ 6–8.) The absence of any written or verbal agreement between Third-Party Defendants and PPD also further repudiates a finding of any special legal relationship justifying a right of implied

18

indemnification.  As such, Third-Party Defendants are entitled to judgment as a matter of law on PPD's claims for contractual indemnification and breach of contract.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's NJCFA claim, and breach of contract and breach of the implied covenant of good faith and fair dealing for individual Defendants Padia and Tabi, **and DENIED** as to breach of contract and breach of the implied covenant of good faith and fair dealing for Defendant PPD; Defendants' Motion to Preclude Expert Report and Testimony of Paul L. Johnson is **GRANTED**; and Third-Party Defendants' Motion for Summary Judgment is **GRANTED**.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: André M. Espinosa, U.S.M.J.
     Parties